United States District Court
Southern District of Texas
**ENTERED**
February 15, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|   |   |   |
|---|---|---|
| Steve Kurt Baughman, | § § § | |
| *Petitioner,* | § § | |
| | § | Case No. 4:21-cv-03016 |
| v. | § § | |
| Bobby Lumpkin, Director, Texas | § | |
| Department of Criminal Justice, | § | |
| Correctional Institutions Division | § | |
| | § § | |
| *Respondent.* | § | |

## MEMORANDUM AND RECOMMENDATION

Before the Court are Petitioner Steve Baughman's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d) and Respondent Bobby Lumpkin's ("the Director") motion for summary judgment.  Dkt. 1; Dkt. 14. After carefully reviewing the petition, Baughman's supporting memorandum, Dkt. 2, the Director's motion, Baughman's response, Dkt. 26, the record, and the appliable law, it is recommended that the Director's motion for summary judgment be granted and that Baughman's petition be denied.  It is further recommended that the Court decline to hold an evidentiary hearing and deny a certificate of appealability.

## Background

On April 2, 2014, Kurt Baughman was arrested for aggravated assault with a deadly weapon and felon in possession of a firearm.  Dkt. 10-1 at 13. The indictment charged him with striking his ex-girlfriend, Machell Spear, with a firearm and threatening to kill Ms. Spear and her son, John Spear.  *Id.* at 25.  The state district court appointed an attorney to serve as Baughman's counsel.  *Id.* at 21.  But Baughman eventually requested a new attorney and filed a grievance against his original one.  *Id.* at 28.  The court then appointed Baughman a second attorney, Ricardo Gonzalez.  *Id.* at 29-30.

Baughman grew frustrated with Mr. Gonzalez's strategy and later moved to replace Mr. Gonzalez with yet another court-appointed attorney.  *See id.* at 57-58.  After filing a bar complaint against Mr. Gonzalez, *see id.* at 87, Baughman filed a flurry of *pro se* motions, complaints, and petitions for mandamus relief.  *See id.* at 90-588.

The trial court appointed Baughman a third attorney, Terrence Gaiser.  *Id.* at 591 (Aug. 15, 2017 appointment order).  Mr. Gaiser promptly moved to have an investigator appointed.  *Id.* at 592-93.  Although the record does not indicate whether the court granted Gaiser's request, it includes numerous documents that either Gaiser or his investigator had procured—including Baughman's medical records, Dkts. 10-20–10-38.

2

Nevertheless, Baughman again demanded new counsel. *Id.* at 645-51 (Dec. 4, 2017 motion). The court immediately addressed Baughman's request at a hearing on pretrial motions. Dkt. 10-11 at 5-13. Baughman moved for a new hearing to demonstrate that he and his attorney were at loggerheads over trial strategy. *See id.* at 8. But the court denied this motion, explaining that Baughman's case had been pending for more than 1300 days, and that it "needs to go to trial, and it needs to go today." *Id.* at 7. Ultimately, Baughman decided to proceed with Mr. Gaiser as his attorney. *Id.* at 13.

Baughman's trial lasted two days. The State presented four witnesses: the victims, Machell and John Spear, and two arresting officers, Deputies Maxwell and Benningfield. *See* Dkt. 10-13 at 16-211. Ms. Spear testified that Baughman came to her house, grew agitated, put a gun to her forehead, and threatened to kill her and her son, John, who was standing nearby. Dkt. 10-13 at 111-12, 115-16, 120. John corroborated these events, further describing the weapon as a silver gun with a brown handle that Baughman had shown John on a prior occasion. *Id.* at 169, 174-78, 190, 208-09 (State Ex. 38). Both victims testified that Baughman used the gun to strike Ms. Spear on the back of her head after she turned to flee. *Id.* at 116-17, 119-20; *see also id.* at 182-83 (John's testimony).

Ms. Spear had given a similar account of events to the officer who interviewed her at the scene. *See id.* at 25-27 (Maxwell's testimony). Deputy

Maxwell testified that Ms. Spear was hysterical, suffering pain, and had "an egg-sized knot that had been split open and ... blood in her hair. *Id.* at 18, 23, 25; *see also* Dkt. 10-16 at 10-14 (State Exs. 8-12, photographs). About an hour after Deputy Maxwell's arrival, Baughman drove up on his motorcycle. Dkt. 10-13 at 29-30, 59. According to Deputy Maxwell, Baughman admitted to having a gun (insisting later it was a BB gun) but said he had thrown it in a ditch. *Id.* at 30-31. Maxwell took Baughman to the area where he claimed to have thrown the gun but found nothing there. *Id.* at 30-31, 34, 61, 73.

During an inventory search of Baughman's motorcycle, another officer, Deputy Benningfield, recovered two firearms—including a brown-handled pistol—from an attached saddlebag. *Id.* at 30-31, 35-36, 55; Dkt. 10-16 at 16-38 (photos, State Exs. 14-36); Dkt. 10-13 at 83-85 (Benningfield). John Spear identified the brown-handled pistol as the one Baughman had used to strike his mother. *See id.* at 176-77 (identifying State Ex. 25).

The State also read into the record a stipulation concerning Baughman's prior conviction for attempted capital murder of a police officer, *id.* at 46, which the jury was instructed to consider only for the limited purpose of determining whether Baughman had a prior felony conviction—an element of the charge of felon in possession of a firearm, Dkt. 10-1 at 657. Over Mr. Gaiser's objection, the court also admitted a 911 call from a neighbor to whose house Ms. Spear

4

had fled after the assault.  Dkt. 10-13 at 130-32; *see also id.* at 127-28 (Ms. Spear testifying that she sought help at house where the resident called 911).

During the defense's case-in-chief, Mr. Gaiser put on two witnesses: Gerald Bush and Linda Pugh.  Mr. Bush testified that the firearms recovered at the scene in belonged to him; Bush had left them in motorcycle after borrowing it.  *Id.* at 217-19.  Ms. Pugh, who is Baughman's mother, *id.* at 227-28, testified about Baughman's character and his relationship with some of the other witnesses in this case.  *See id.* at 233-36.

The jury convicted Baughman on one count of felon in possession of a firearm and two counts of aggravated assault with a deadly weapon.  Dkt. 10-14 at 20-21.  Because of Baughman's prior felony conviction, the court sentenced him to 30 years in prison.  Dkt. 10-15 at 26.

Baughman appealed.  Dkt. 10-1 at 728 (docket sheet).  The Fourteenth Court of Appeals modified the judgment to delete duplicative court costs but otherwise affirmed.  Dkt. 10-39 at 19.  The Texas Court of Criminal Appeals ("TCCA") denied review.  *See* Dkt. 11-39.

Baughman then sought state habeas relief.  *See* Dkt. 11-25; Dkt. 11-29; Dkt. 11-32.  The trial court denied his petitions, Dkt. 11-22; Dkt. 11-26; Dkt. 11-30, which decision was affirmed summarily on appeal, Dkt. 11-33.  The TCCA denied review.  Dkt. 11-38.  Baughman timely filed the instant petition under 28 U.S.C. § 2254, which is ripe for review.  Dkt. 1.

## **Legal Standard**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") curtails the grounds on which a federal court may issue a writ of habeas corpus. Relief is available for claims that were adjudicated on the merits only if the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 7-8 (2002) (quoting 28 U.S.C. § 2254(d)); *Cobb v. Thaler*, 682 F.3d 364, 372-73 (5th Cir. 2012) (same). The analysis is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).

"A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts." *Gray v. Epps*, 616 F.3d 436, 439 (5th Cir. 2010) (citing *Williams v. Taylor*, 529 U.S. 362, 404-08 (2000)). To constitute an "unreasonable application of" clearly established federal law, a state court's holding "must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014)). "To satisfy this high bar,

6

a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

A state court's factual determinations are "presumed to be correct" unless the petitioner rebuts those findings with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness extends not only to express factual findings, but also to implicit or "unarticulated findings which are necessary to the state court's conclusion of mixed law and fact." *Murphy v. Davis*, 901 F.3d 578, 597 (5th Cir. 2018) (quoting *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001)). A federal court "may not characterize these state-court factual determinations as unreasonable 'merely because [it] would have reached a different conclusion in the first instance.'" *Brumfield v. Cain*, 576 U.S. 305, 313-14 (2015) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)). "Instead, § 2254(d)(2) requires that [a federal court] accord the state trial court substantial deference." *Id.* at 314.

"Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000) (citing Rule 11 of the Rules Governing § 2254 Cases and Fed. R. Civ. P. 81(a)(2)). In ordinary civil cases,

a court must construe the facts in a light most favorable to the nonmoving party. *See Tolan v. Cotton*, 572 U.S. 650, 657 (2014). AEDPA, however, modifies these principles; Rule 56 "applies only to the extent that it does not conflict with the habeas rules." *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274, 284 (2004). "Therefore, § 2254(e)(1)—which mandates that findings of fact made by a state court are 'presumed to be correct'—overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the nonmoving party." *Id.*

As for the habeas petition itself, pleadings by pro se litigants are held "to less stringent standards than formal pleadings drafted by lawyers[.]" *Haines v. Kerner*, 404 U.S. 519, 520 (1972). "The filings of a federal habeas petitioner who is proceeding pro se are entitled to the benefit of liberal construction." *Hernandez v. Thaler*, 630 F.3d 420, 426 (5th Cir. 2011) (citations omitted).

## <u>Analysis</u>

Baughman advances eleven grounds that allegedly entitle him to a new trial. Dkt. 1. The Director's summary judgment motion groups these claims into four categories: ineffective assistance of counsel (grounds one, seven, nine, ten, and eleven), improperly admitted evidence (grounds two and six), *Brady* violations (grounds three and eight), and prosecutorial misconduct (grounds four and five). Dkt. 14 at 11, 24, 28, 31.

There is no dispute that Baughman raised the same contentions in his state habeas proceedings. *See* Dkt. 11-32 at 10-29; Dkt. 11-35 at 10-29; Dkt. 11-37 at 10-29.[1]  All factual determinations by the state habeas courts—even those merely implicit in the decision—therefore are presumed to be accurate. *See* 28 U.S.C. § 2254(e)(1); *Martinez*, 644 F.3d sat 242-42.  Moreover, the state courts summarily rejected Baughman's habeas claims without explanation, Dkt. 11-30; Dkt. 11-33; Dkt. 11-38.  So to obtain relief here, Baughman must show that "there was no reasonable basis for the state court to deny relief.'" *Salts v. Epps*, 676 F.3d 468, 480 n.46 (5th Cir. 2012)) (applying this standard "where a state court summarily denies a petitioner's motion" without providing reasons, quoting *Harrington*, 562 U.S. at 98).

## I.  Baughman's counsel was not unconstitutionally deficient.

Many of Baughman's contentions challenge the conduct of his trial counsel.  Three of them allege that Mr. Gaiser conducted an inadequate investigation (grounds seven, nine, and ten), *see* Dkt. 1 at 9, 12, 14, and two allege that Mr. Gaiser provided inadequate representation at trial (grounds one and eleven), *id.* at 6, 16.

---

[1] The Director does not argue that Baughman failed to exhaust or otherwise defaulted on any of his claims.  *See* Dkt. 14 at 8.

### A.    Legal standard: *Strickland v. Washington*

Baughman's complaints about his counsel are governed by *Strickland v. Washington*, 466 U.S. 668 (1984).   Under *Strickland*, Baughman first must demonstrate that his attorney's representation was deficient.   *See id.* at 690. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."   *Hinton v. Alabama*, 571 U.S. 263, 274 (2014) (internal quotation marks omitted).

Under the first prong of *Strickland*'s test, counsel's performance must be compared to "an objective standard of reasonableness, mindful of the strong presumption of adequacy."   *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997).   "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire [process] with obvious unfairness."   *Id.* (quoting *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983)).

Review of counsel's conduct is doubly constrained in the context of Section 2254(d) petitions.   "Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's

10

actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

The second prong of *Strickland* examines whether the attorney's "deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. To satisfy this requirement, the defendant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

### B.  Baughman has not shown that counsel's investigation was deficient or that any deficiency prejudiced him.

Baughman attacks his counsel's performance by asserting that Mr. Gaiser inadequately investigated the facts of the case.  Dkt. 1 at 9, 12, 14.  The record does not support Baughman's contentions.

As a legal matter, whether Mr. Gaiser investigated Baughman's proposed defenses is a factual issue that the state habeas court implicitly resolved against Baughman.  *See Murphy*, 901 F.3d at 597.  Baughman offers no "clear and convincing evidence" showing that the state court's determination is unreasonable.  *See* 28 U.S.C. § 2254(e)(1).  To the contrary, the record indicates that Mr. Gaiser filed appropriate motions promptly after his appointment, *see* Dkt. 10-1 at 592, requested video evidence, *see* Dkt. 10-19 at 4 (Gaiser's Affidavit), and made strategic decisions about what evidence to

11

challenge or introduce and what witnesses could provide potentially exculpatory evidence, *see id.* at 4-6.

Baughman's contentions do not indicate that his counsel failed to adequately investigate the case. For instance, Baughman complains (in ground seven) that counsel failed to withdraw a prior attorney's motion to suppress and file a new motion. Dkt. 2 at 25-28. As the Director contends, and the Court agrees, Mr. Gaiser had no obligation to withdraw prior counsel's suppression motion and file his own. *See* Dkt. 14 at 18.

Moreover, the motion to suppress was futile. According to Baughman, the inventory search of his motorcycle that uncovered the firearm was unlawful because officers did not follow internal procedures that required completion of certain paperwork. *See* Dkt. 2 at 26-27 (quoting testimony about information on the tow slip). But "failure to compile the written inventory does not render the inventory search invalid." *See United States v. Loaiza Marin*, 832 F.2d 867, 869 (5th Cir. 1987) (adopting this rule). Baughman's trial counsel had no obligation to pursue a meritless challenge. *See Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984) (per curiam) ("Counsel is not required to engage in the filing of futile motions.").

Nor did counsel improperly fail to investigate and pursue a self-defense claim (tenth point). According to Baughman, one of the alleged victims, John Spear, was "high on methamphetamine" and had attacked Baughman—as

purportedly evidenced by a bite mark on Baughman's hand. *See* Dkt. 2 at 38. As the Director notes, however, Mr. Gaiser investigated and obtained Baughman's medical records. Dkt. 14 at 20-21 (citing Dkt. 10-19 at 4-6). Those records reflected no evidence of a wound until *after* Baughman was jailed. *See* Dkt. 10-19 at 5. Mr. Gaiser's decision to refrain from further exploring a self-defense theory was reasonable. *See Hinton*, 571 U.S. at 274.

Baughman's allegation that counsel failed to investigate evidence exposing perjury by State witnesses (ninth point) is equally flawed. It asserts that Mr. Gaiser failed to obtain date and time stamps on photographs taken by police. *See* Dkt. 1 at 12; Dkt. 2 at 34-35. Those date and time stamps are not in the record. Had this been investigated, Baughman argues, counsel would have found that the officers had violated departmental policy by searching Baughman's motorcycle before charges were accepted—thereby providing fodder for impeaching the officers' testimony and invalidating the inventory search that found the guns. Dkt. 2 at 34-35. This argument is speculative on its face and could be rejected for that reason alone. *See, e.g.*, *Greer v. Davis*, 2016 WL 6583712, at *17 (S.D. Tex. Nov. 2, 2016) (rejecting "speculative" contention that trial counsel improperly failed to obtain dispatch logs that would have been exculpatory, when the dispatch logs were not included in the record).

But even if Baughman's speculation about this timeline were accurate, the state court reasonably could have concluded, albeit implicitly, that this type of policy violation would not have required excluding the guns. Baughman misplaces reliance on *Florida v. Wells*, 495 U.S. 1, 4-5 (1990), which held that the complete absence of any criteria for conducting an inventory search would violate the Fourth Amendment.   But the Court finds no analogous Supreme Court decision holding that mere deviations from policies governing the timing for conducting an inventory search will categorically invalidate the search.  *See, e.g.*, *Gray*, 616 F.3d at 439 (requiring that the state court's decision contravene a prior Supreme Court decision, either directly, or "based on materially indistinguishable facts").  Given Baughman's inability to meet the strict standard of review and invalidate the search itself, he cannot do so with respect to counsel's alleged failure to investigate the issue.

### C.   Counsel's conduct at trial was neither deficient nor prejudicial under *Strickland*.

Likewise, Baughman cannot demonstrate that his counsel was unconstitutionally deficient at trial.  Baughman argues he was constructively denied counsel due to a conflict with Mr. Gaiser, Dkt. 1 at 6, and that Mr. Gaiser should have objected to the State's introduction of his prior convictions, *id.* at 16.  Baughman's contentions do not warrant relief.

The denial of Baughman's request for appointment of yet another attorney provides no basis for relief. *See* Dkt. 1 at 6; Dkt. 2 at 1-3. Trial courts have discretion to deny last-minute requests to substitute counsel, *see United States v. Silva*, 611 F.2d 78, 79 (5th Cir. 1980), and requests that are made for dilatory purposes, *see Newton v. Dretke*, 371 F.3d 250, 255-56 (5th Cir. 2004). Courts examine six factors when reviewing a state court's denial of a continuance to obtain new counsel:

> (1) the length of the requested delay; (2) whether the lead counsel has an associate who is adequately prepared to try the case; (3) whether other continuances have been requested and granted; (4) the balanced convenience or inconvenience to litigants, witnesses, opposing counsel and the court; (5) whether the requested delay is for a legitimate reason, or whether it is dilatory and contrived; (6) whether there are other unique factors present.

*Gandy v. Alabama*, 569 F.2d 1318, 1324 (5th Cir. 1978). The record here reflects that Baughman already had received multiple continuances to obtain new counsel, that his case had been pending for over three years, and that his latest request evinced an improper attempt to delay the trial. Dkt. 10-1 at 21, 30, 591 (appointment of attorneys); 645-51 (motion to appoint new counsel filed December 4, 2017—the day of the pretrial hearing). The trial court did not err by declining to grant Baughman's eleventh-hour motion for continuance, filed on the day of his pretrial hearing, to appoint a fourth new attorney in this case. *See United States v. Uptain*, 531 F.2d 1281, 1290 (5th Cir. 1976) ("[T]he

freedom to have counsel of one's own choosing may not be used for purposes of delay."); *see also United States v. Sexton*, 473 F.2d 512 (5th Cir. 1973) ("We cannot hold that the trial judge abused his discretion by concluding that Sexton's eleventh hour motions were interposed for delay.").

As for counsel's performance at trial, Baughman maintains that Mr. Gaiser should have objected to the stipulation about his prior conviction for attempted capital murder of a police officer. Construed liberally, he maintains that this violated his 14th Amendment right to due process. *See* Dkt. 1 at 16; Dkt. 26 at 37. This argument is foreclosed.

First, Baughman has not shown that his trial counsel was objectively deficient in handling the stipulation about the prior conviction. As noted by the Fourteenth Court of Appeals, Baughman's counsel *did* object when the trial court first ordered the entire stipulation to be read into the record. *See* Dkt. 10-13 at 13 (Mr. Gaiser objecting to the reading of the stipulation); Dkt. 10-39 at 14 (court of appeals' order). Moreover, as the trial court later acknowledged at the hearing on Baughman's motion for new trial, any error in reading the stipulation to the jury was committed by the court, and not by Baughman's counsel. *See* Dkt. 10-18 at 7 (new counsel asserting that Mr. Gaiser failed to object to reading of prior conviction); *see also id.* at 21 (trial court explaining "if there was an error, this was my error and not Mr. Gaiser's").

Regardless, any alleged error regarding the stipulation was not prejudicial, given the strong evidence supporting Baughman's guilt. Dkt. 10-39 at 15-16 (court of appeals' opinion on direct appeal). As a matter of fact, both victims gave nearly identical accounts of how Baughman threatened to kill them and then struck Ms. Spear with a gun, *compare* Dkt. 10-13 at 111-12, 115-16, 120 (Ms. Spear's testimony), *with id.* at 174-78, 182-83, 190, 208-09 (John Spear's testimony), and Baughman did not meaningfully challenge their version of events. The officers also found the firearm used in the assault, which Baughman (as a convicted felon) could not lawfully possess. *Id.* at 85 (Deputy Benningfield testifying to contents of inventory search); *id.* at 176-77 (John Spear identifying the gun).

And as a matter of law, admitting evidence of prior convictions that are relevant to an offense does not violate a defendant's due process rights, especially when limiting instructions are given. *See, e.g.*, *Spencer v. Texas*, 385 U.S. 554, 563, 568 (1967) (addressing habitual offender statute). Here, Baughman's counsel requested, and the trial court gave, a limiting instruction that ensured the jury only considered the prior convictions to determine if Baughman was a convicted felon—an element of the charge for felon in possession of a weapon. *See* Dkt. 14 at 26; Dkt. 10-14 at 4-5; Dkt. 10-1 at 657. Thus, the state habeas courts reasonably rejected Baughman's *Strickland* contentions, which bars relief here.

## II.   **Baughman's evidentiary challenges provide no basis for habeas relief.**

Baughman raises two points about impermissibly admitted evidence. The first largely reprises one of his *Strickland* allegations rejected above that the substance of his prior criminal conviction was improperly admitted.  Dkt. 1 at 6 (ground two); Dkt. 2 at 9-11; *see supra* Part I.C.  But the Fifth Circuit rejected an analogous due process challenge to the introduction of a defendant's prior crimes, holding that this evidence—*even without* a limiting instruction—did not have a "substantial and injurious effect or influence in determining the jury's verdict."  *Smallwood v. Johnson*, 73 F.3d 1343, 1349-50 (5th Cir. 1996) (quoting *Pemberton v. Collins*, 991 F.2d 1218, 1226 (5th Cir. 1993)).  Admitting Baughman's prior conviction did not violate his due process rights, particularly when the trial court gave a limiting instruction.

Second, Baughman contends (in ground six) that the trial court violated the Confrontation Clause by admitting a 911 call containing double hearsay. The call included statements from Ms. Spear recounting the events and asking for help.  Dkt. 2 at 23-24; Dkt. 10-13 at 127-28.  When admitting the call, the trial court ruled the statements fell within a hearsay exception for excited utterances and were not testimonial.  Dkt. 10-13 at 128-32.

The admissibility of alleged hearsay presents a question of state law that cannot provide a basis for habeas relief.  *See Lawrence v. Lensing*, 42 F.3d 255,

258 (5th Cir. 1994) (citing *Gray v. Lynn*, 6 F.3d 265, 268 (5th Cir. 1993)); *see also infra*, Part IV.B.   Admitting the 911 call also did not violate the Confrontation Clause because the recorded statements during an ongoing emergency do not qualify as "testimonial" under *Crawford v. Washington*, 541 U.S. 36 (2004).  *See Davis v. Washington*, 547 U.S. 813, 828 (2006).  Rather, as the trial court correctly reasoned, these statements were made to obtain emergency assistance and not for the purposes of admitting the statements at trial.   Dkt. 10-13 at 130-31 ("It's clearly an ongoing emergency.   The guy making the call was armed with a gun because he was frightened....   It certainly is not testimonial.").

In addition, the State correctly asserts that admitting the 911 call, even if erroneous, was harmless.   After all, Ms. Spear testified about the events recounted on the call.   *See* Dkt. 10-13 at 126-30.   Baughman's evidentiary challenges should be rejected.

## III.   Baughman is not entitled to relief under *Brady v. Maryland.*

Baughman next attacks the adequacy of the State's disclosure of exculpatory and impeachment evidence as required by *Brady v. Maryland*.  *See* Dkt. 2 at 11-14, 30-33 (grounds three and eight).   To prevail, Baughman must show that (1) the prosecution suppressed evidence; (2) the evidence was favorable; (3) the evidence was material to either guilt or punishment; and (4) discovery of the allegedly favorable evidence was not the result of a lack of

due diligence.  *See Avila v. Quarterman*, 560 F.3d 299, 305 (5th Cir. 2009).  The state habeas courts reasonably rejected Baughman's *Brady* challenge.

### A.    The disciplinary reports are not constitutionally material.

Baughman's first complaint (in ground three) concerns a series of disciplinary reports against the two officers who testified at trial: Deputy Benningfield and Deputy Maxwell.   Baughman claims that the State unlawfully suppressed these reports.  *See* Dkt. 2 at 11-14, 63-84.

For *Brady* claims, "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *United States v. Bagley*, 473 U.S. 667, 682 (1985).  "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 109-10 (1976).  Rather, the alleged suppression of evidence must have "put the whole case in a different light so as to undermine confidence in the verdict."  *Kyles v. Whitley*, 514 U.S 419, 434-35 (1995).

The disciplinary reports do not meet this test.  The record indicates that Deputy Benningfield was disciplined twice—once for "fail[ing] to seal [an] evidence bag" and once for failing to correct paperwork.  Dkt. 2 at 12, 79, 81.  Neither incident bears on the Benningfield's truthfulness.  Even if they did, the strong evidence of Benningfield's guilt, as detailed *supra* Part I.C and *infra*,

Part II.B, undermines any reasonable probability that the outcome may have differed had the reports been disclosed. *See United States v. Weintraub*, 871 F.2d 1257, 1262-64 (5th Cir. 1989) (affirming conspiracy conviction when withheld impeachment evidence did not cast "serious doubt" on the conviction).

Deputy Maxwell's disciplinary record is equally immaterial. He was cited three times for failing to complete paperwork correctly, Dkt. 2 at 63-70, once for not taking a complainant's statement, *id.* at 71, 73, and once for failing to investigate a burglary "because he advised the Complainant that he was sick was about to go home," *id.* at 77. Most of these are administrative errors. None have any apparent relevance to Deputy Maxwell's handling of this case. And even if those infractions bore tangentially on his credibility, the strength of the State's case makes it improbable that the jury would have acquitted Baughman if the reports were admitted. *See Williams v. Davis*, 2017 WL 4541463, at *8 (S.D. Tex. Oct. 10, 2017).

Baughman's contentions are doubly insufficient because of the standard of review in this case. To prevail, Baughman must show that the state habeas courts violated "clearly established federal law." *See* 28 U.S.C. § 2254(d)(1). But the Court finds no binding authority that compelled the State to turn over evidence analogous to these disciplinary reports. This asserted *Brady* violation cannot support habeas relief.

**B.    The crime scene photograph metadata was not material to Baughman's guilt.**

Baughman's second *Brady* claim—that the prosecution withheld the date and time for certain on-scene photographic evidence (ground eight)—fails because the evidence was not material to his case.  This argument hinges on Ms. Spear's testimony indicating that Baughman was arrested immediately upon his arrival, Dkt. 10-13 at 140, a police log entry on the day of the incident indicating that Baughman was charged and "In Custody' at 9:03:46 a.m.," Dkt. 11-32 at 157 (attached to Baughman's third habeas petition), and two photographs depicting him in handcuffs and standing by the patrol car, Dkt. 2 at 31 (citing Dkt. 10-16 at 39 (State Ex. 37) and Dkt. 10-16 at 63 (DX 1)). Baughman speculates that evidence that the photos were taken earlier, immediately upon his arrival, could have impeached Deputy Maxwell's testimony at the suppression hearing that Baughman was not arrested until after the district attorney approved the charges, *see* Dkt. 10-11 at 47, thereby leading to exclusion of both the search that uncovered the guns and Baughman's inculpatory statement about possessing a gun.  Dkt. 2 at 30-32.

Like his related argument that his counsel was ineffective for failing to procure this evidence, *see supra* Part I.B, Baughman's contention that the State violated *Brady* by failing to disclose it is wholly speculative.  Regardless, nothing indicates there was a reasonable probability that disclosure of the date

and time stamps on the photos would have led to a different outcome.  *See Bagley*, 473 U.S. at 682 (materiality standard).

The State's case was strong.  *See supra* Part I.C.  Both victims testified that Baughman put a gun to Ms. Spear's head, threatened to kill her and John, and then forcefully struck Ms. Spear's head with the gun.  Dkt. 10-13 at 111-12, 115-17, 119-20 (Ms. Spear); *id.* at 169, 174-78, 182-83, 190, 208-09 (John Spear).  Bolstering that further, Ms. Spear's account at trial dovetailed with what she told Deputy Maxwell on the day of the incident, and what Deputy Maxwell saw upon arrival.  *Id.* at 18, 23, 25-27.

The Court finds no clearly established law indicating that whether Baughman was arrested at 9:03 a.m. or sometime earlier affects the lawfulness of the inventory search of his motorcycle that found his guns.  Moreover, given the record, the Court cannot conclude that the state court lacked a "reasonable basis" for denying relief on this claim.  *Engle v. Lumpkin*, 33 F.4th 783, 790 (5th Cir. 2022) (quoting *Harrington*, 562 U.S. at 98; *see also, e.g.*, *Cannon v. Kelly*, 2012 WL 1038802, at *9 (S.D. Miss. Mar. 29, 2012) (denying § 2254 relief on *Brady* claim where "a finding of immateriality by the State would not be objectively unreasonable").  Baughman's *Brady* contentions do not merit relief.

23

## IV.   **Baughman has not demonstrated that the State committed misconduct warranting habeas relief.**

Baughman's remaining claims (grounds four and five) argue that the prosecution offered perjured testimony and coached witnesses between examinations at trial.  *See* Dkt. 1 at 7, 8; Dkt. 2 at 15-23.  According to Baughman, these actions violated his due process rights.  Dkt. 2 at 15.

### A.   **Baughman has not shown that the State offered perjured testimony.**

For his argument about perjured evidence, Baughman focuses on statements made by officers that the firearm used to strike Ms. Spear had been discharged three times.  Baughman argues that forensic reports reflect the gun was never fired, and thus the officers' testimony was false.  Dkt. 2 at 15-18.

To prevail on a due process claim of perjured testimony, a petitioner must show (1) the actual falsity of that testimony; (2) that the prosecution knew the testimony was false; and (3) that the testimony was material.  *See Giglio v. United States*, 405 U.S. 150, 153-54 (1972); *see also United States v. Mason*, 293 F.3d 826, 828 (5th Cir. 2002).  Lack of materiality alone defeats Baughman's claim.  At best, whether Baughman fired the pistol was tangential to the charges that he unlawfully possessed a firearm and committed assault by threatening to kill the victims and striking Ms. Spear with the gun.  *See* Dkt. 10-13 at 111-20.  Far from being "central" to the State's case, the State's closing argument barely mentioned the discharge of the firearm.  *See* Dkt. 10-

24

14 at 11-19 (single mention of this issue: "You heard about the gunshots").
There was no violation of Baughman's due process rights. And it was wholly
reasonable for the state habeas courts to reach this conclusion.

### B. Baughman's state law claims provide no basis for federal habeas relief.

Baughman's last contention (fifth ground) invokes "the Rule," *i.e.*, Texas
Rule of Evidence 614. That rule provides, "[a]t a party's request, the court
must order witnesses excluded so that they cannot hear other witnesses'
testimony." Tex. R. Evid. 614. Baughman asserts that by coaching its
witnesses, the State violated his due process rights. Dkt. 2 at 18-23.

This claim cannot support habeas relief. Under Section 2254, a state
prisoner seeking review "must assert a violation of a federal constitutional
right." *Lawrence*, 42 F.3d at 258. Errors of state law are insufficient. *Estelle
v. McGuire*, 502 U.S. 62, 67 (1991) ("We have stated many times that federal
habeas corpus relief does not lie for errors of state law.") (internal quotation
marks omitted); *see also McDuff v. Johnson*, 1998 WL 857876, at *9 (5th Cir.
Nov. 17, 1998) (rejecting invocation of "Texas' accomplice-witness rule" as basis
for habeas relief). Baughman's reliance on "the Rule" is unavailing.

### V. Baughman is not entitled to an evidentiary hearing or a certificate of appealability.

This Court should decline to hold an evidentiary hearing on Baughman's
petition. A petitioner is entitled to a hearing only upon showing (1) a claim

that relies on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," (2) "a factual predicate that could not have been previously discovered through the exercise of due diligence" or (3) "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e).  Because Baughman has not made any such showing, an evidentiary hearing is unwarranted.

Further, Section 2254 actions require a certificate of appealability to proceed on appeal.  28 U.S.C. § 2253(c)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003).  A district court must issue or deny a certificate of appealability when entering a final order rejecting habeas relief.  *See Estelle v. Lumpkin*, 2022 WL 17587128, at *2-3 (S.D. Tex. Nov. 22, 2022).  Baughman has not made the requisite showing of a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), such that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard*, 542 U.S. at 282 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). This Court therefore should deny a certificate of appealability.

## Recommendation

For the foregoing reasons, it is **RECOMMENDED** that the Court **GRANT** Respondent Bobby Lumpkin's motion for summary judgment (Dkt. 14), **DENY** Petitioner Steven Kurt Baughman's petition for a writ of habeas corpus (Dkt. 1), **DENY** his request for an evidentiary hearing, and **DENY** a certificate of appealability.

**The parties have fourteen days from service of this Report and Recommendation to file written objections.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.  *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).**

Signed on February 15, 2022, at Houston, Texas.

Yvonne Y. Ho
United States Magistrate Judge

27